**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

SLEP-TONE ENTERTAINMENT
CORPORATION,
      Plaintiff,

    v.

K-RYAN, LTD.
      Defendant.

**CASE NO.**: 14-cv-3568

## COMPLAINT

The Plaintiff, SLEP-TONE Entertainment Corporation ("SLEP-TONE"), by its counsel,

hereby sues Defendant, K-RYAN, LTD. ("Potato Creek Johnny's") alleges as follows:

## SUMMARY

1.    This is an action by the Plaintiff for trademark infringement and federal unfair

competition in which the Defendant is accused of knowingly benefiting from the use of

pirated, counterfeit karaoke accompaniment tracks belonging to the Plaintiff.

2.    The Defendant's liability arises from their hiring of one or more karaoke operators who

make use of pirated, counterfeit karaoke accompaniment tracks to produce karaoke shows

at the Defendant's venue(s), and from continuing to hire and utilize the services of those

karaoke operator(s), having previously been informed of the infringing nature of the

operator(s)' services.  The Defendant derives a significant financial benefit from the use

of this pirated material in the establishment(s) it controls.

## JURISDICTION AND VENUE

3.    This is an action for trademark infringement and unfair competition arising under §§ 32

and 43 of the Trademark Act of 1946, 15 U.S.C. §§ 1114 and 1125.  This Court has

exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

4.   This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to the Plaintiff's Lanham Act unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

5.   This Court has supplemental jurisdiction over the Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a), in that the state-law claims are so related to the Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.   This Court has both specific and general personal jurisdiction over the Defendant, in that the Defendant is a commercial enterprise operating one or more eating and/or drinking establishments in this State and judicial district and in that the Defendant's liability arises from their operation of those establishments in this State and judicial district.

7.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because the Defendant resides in this State, and within this judicial district.

## THE PLAINTIFF

8.   Plaintiff SLEP-TONE is a North Carolina corporation having its principal place of business at 14100 South Lakes Drive, Charlotte, North Carolina.

## THE DEFENDANT

9.   Defendant, K-RYAN, LTD. is an Illinois corporation that operates an establishment known as "Potato Creek Johnny's" in Glenview, Illinois.

10. The Defendant in this action operates a commercial establishment(s) to which karaoke entertainment services are provided by a third party as entertainment for the Defendant's patrons, as an inducement for their patronage and purchase of food, drink, and other concessions.

## THE RIGHTS OF THE PLAINTIFF

11. Plaintiff SLEP-TONE is the owner of U.S. Trademark Registrations No. 1,923,448 and No. 4,099,045, both for the trademark SOUND CHOICE.

12. Plaintiff SLEP-TONE is also the owner of U.S. Trademark Registrations No. 2,000,725, and No. 4,099,052 both for a display trademark as follows:



13. Plaintiff SLEP-TONE has, for the entire time its marks ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendant, with notice of its federal registrations through the consistent display of the symbol ® with its marks as used.

## THE ACTIVITIES OF THE DEFENDANT AND ITS SUPPLIERS

14. The Defendant has contracted with one or more suppliers known as karaoke operators who provide karaoke entertainment shows at the Defendant's establishment(s).

15. These karaoke shows consist of participatory entertainment, in which individual patrons or groups of patrons sing popular songs while accompanied by recorded accompaniment music.

16. During each of the karaoke shows performed at the Defendant's establishment(s), the karaoke operator(s) caused a number of songs to be played for the purpose of accompanying individual patrons or groups of patrons while they sang.

17. Each song within the recorded accompaniment music, together with graphical displays of the lyrics and other material synchronized to the music, is a "karaoke accompaniment track."

18. With respect to the Defendant's establishment(s), a substantial portion of the content represented on the karaoke accompaniment tracks used to put on the karaoke shows was originally created by the Plaintiff.

19. However, the Plaintiff did not create the karaoke accompaniment tracks actually used by the karaoke operators.

20. Rather, the karaoke operator(s) either made the tracks themselves by duplicating them from an original or non-original source or acquired the tracks from another person who duplicated or derived them from an original or non-original source.

21. The karaoke operator(s) or other persons identified in the preceding paragraph were not authorized to make duplicates of the Plaintiff's karaoke accompaniment tracks.

22. The karaoke operator(s) or other persons so identified were not authorized to apply the Sound Choice Marks to any product, including to any karaoke accompaniment track.

23. The karaoke operator(s) were not authorized to obtain or use duplicates of the Plaintiff's karaoke accompaniment tracks.

24. The karaoke operator(s) or other persons did not pay any royalties or fees to the Plaintiff or to the upstream owners of copyright in the underlying musical works for the privilege of conducting their duplication activities.

25.     The karaoke operator(s) or other persons did not pay any royalties or fees to the Plaintiff for the privilege of displaying the Sound Choice Marks during the karaoke shows.

26.     As a result of the karaoke operator(s)' (or other persons') duplication activities, the karaoke operator(s), and thus the Defendant, has been supplied with counterfeit karaoke accompaniment tracks.

27.     Because the duplication activities were not undertaken with the Plaintiff's knowledge or authorization, the Plaintiff was unable to control the quality of the counterfeit karaoke accompaniment tracks.

28.     In most if not all cases, the counterfeit karaoke accompaniment tracks are degraded from the original quality, such that the high quality of the Plaintiff's karaoke accompaniment tracks is no longer as evident as it is when original media are used.

29.     The Defendant realized substantial revenues and profits from the sale of concessions to patrons during the performance of karaoke shows at which counterfeit karaoke accompaniment tracks were used and counterfeits of the Sound Choice Marks were displayed.

30.     The activities of the Defendant are not isolated or sporadic occurrences, but are instead regular activities undertaken over a long period of time, in some cases months.

31.     The acts attributable to the Defendant are of a commercial nature, in that the acts were principally motivated by the transfer of money by, between, and among the various participants in the karaoke shows in connection with the services being provided.

## CULPABILITY OF THE DEFENDANT

32.     The Defendant has the right and ability to control whether its contractor(s) uses authentic or counterfeit materials to provide services.

33.   On or about May 31, 2013, the Plaintiff and affiliates of the Plaintiff informed the Defendant of the infringing and counterfeit character of their contractor(s)' karaoke accompaniment tracks.

34.   The Plaintiff has offered the Defendant the opportunity to enter into its Verified Compliance Safe Harbor Program, a program that protects venues from liability for the acts of their contractors in exchange for requiring their contractors to provide information about their karaoke systems to enable the Plaintiff to assess whether those contractors are operating legally.

35.   The Plaintiff also provides a certification program to karaoke operators as a means by which venues can determine, without significant inquiry, whether the karaoke operator they wish to hire is using authentic materials or not.

36.   As a result of the Plaintiff's efforts, the Defendant has actual knowledge of the infringing and counterfeit nature of their contractor(s)' karaoke materials.

37.   Despite that knowledge, the Defendant has failed and refused to terminate the services of their contractor(s).

38.   Despite that knowledge, the Defendant has continued to derive a significant financial benefit from the karaoke shows provided at their establishment(s).

## THE HARM TO THE PLAINTIFF

39.   As a manufacturer of karaoke accompaniment tracks, the Plaintiff has expended vast sums of money to re-record popular songs in karaoke format.

40.   The Plaintiff's expenditures, which total in the tens of millions of dollars over a 27-year period, include money spent to build a world-class recording studio, to hire musicians, to

acquire appropriate licenses, to manufacture compact discs, to pay ongoing royalties, and to advertise and market its products, among other items.

41.     The Plaintiff generates revenue by selling and licensing authentic original materials on compact discs to the consumers of its products, which include home users, professional karaoke operators, and venues that operate their own karaoke systems.

42.     There is, in this judicial district and in the United States generally, a market for karaoke entertainment, in that there is a significant number of persons who wish to be entertained by viewing and participating in karaoke shows.

43.     The Defendant seeks to serve that market by providing karaoke shows at their venue(s) at no or little direct cost to the patrons, in exchange for patronage that includes the purchase of food, alcohol, and/or other concessions.

44.     In order to serve that market, the Defendant has contracted, at some expense, with professional karaoke operator(s) who provide the karaoke shows to the patrons at the Defendant's establishment(s).

45.     Rather than paying fair-market prices for the services of karaoke operators who have legally acquired karaoke accompaniment tracks for use in providing karaoke shows, the Defendant has instead contracted with pirate karaoke operator(s).

46.     The Defendant had benefitted from below fair-market pricing for the services they receive, because pirate karaoke operators can afford to charge less money for their services than fully legal karaoke operators can afford.

47.     The pirate karaoke operators can afford to charge less because, unlike the fully legal operators, the pirate operators did not spend the thousands of dollars necessary to acquire

legal music, yet they nonetheless offer the same songs as, if not many more songs than, the legal karaoke operators.

48. The Defendant's willingness to pay pirate karaoke operator(s) to provide karaoke shows at their establishment(s), rather than hiring legal operators at a higher expense, encourages previously legal operators to become pirate operators in order to reduce their costs and maintain profitability.

49. As a direct result of the Defendant's participation in the market for pirate karaoke, the Plaintiff has experienced significantly reduced sales of its legitimate products, as would-be purchasers of the Plaintiff's legal products eschew those purchases in favor of obtaining counterfeit product at a greatly reduced cost.

50. The Defendant's knowing use and benefit from materials pirated from the Plaintiff's original materials, has deprived the Plaintiff of revenue it would have received from the purchase or licensing of original materials.

## PIRACY INVOLVING KARAOKE TRACKS OF OTHERS

51. The pirate karaoke operator(s) who provide services to the Defendant do not limit their piracy to the Plaintiff's tracks.

52. Specifically, the pirate karaoke operator(s) has also committed acts of piracy of other manufacturers' accompaniment tracks, utilizing the words, names, symbols, and other devices associated with those manufacturers, upon information and belief without authorization.

53. The Defendant's knowledge of the infringing character of their contractor(s)' activities with respect to SOUND CHOICE®-branded karaoke accompaniment tracks applies with equal force to tracks belonging to other manufacturers.

**DAMAGES**

54.     The Defendant's unauthorized use of and benefit from the use of the Sound Choice

Marks has damaged the Plaintiff both in the aggregate and individually.

55.     The Defendant has damaged the Plaintiff in an amount of at least $100,000.00.

56.     Moreover, by exerting illegitimate and unfair pressure upon the market for karaoke

services in this State and judicial district through the use of pirated material belonging to

the Plaintiff and to other manufacturers, the Defendant has cost the Plaintiff in excess of

$100,000 in revenue from legitimate sources crowded out of the market by the

Defendant's piracy.

**FIRST CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT**

57.     The Defendant knowingly directly benefited from the use of, and through one or more

contractors used, a reproduction, counterfeit, or copy of the Sound Choice Marks in

connection with the provision of karaoke entertainment services, by displaying and

permitting to be displayed the reproduction, counterfeit, or copy of the Sound Choice

Marks during the provision of those services.

58.     The Defendant's use of the Sound Choice Marks was "in commerce" within the meaning

of the Trademark Act of 1946 as amended.

59.     The Plaintiff did not license the Defendant to make, acquire, or use reproductions,

counterfeits, or copies, or to use the Sound Choice Marks in connection with the services

provided at their establishment(s).

60.     Use of the Sound Choice Marks in the manner attributable to the Defendant is likely to

cause confusion, or to cause mistake, or to deceive the Defendant's customers into

believing that the services those customers are receiving are being provided with the

9

authorization of the Plaintiff using bona fide, legitimate, authorized karaoke accompaniment tracks.

61.     The acts of the Defendant were willful and knowing.

62.     The Plaintiff has been damaged by infringing activities of the Defendant.

63.     Unless enjoined by the Court, the Defendant's infringing activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

**SECOND CLAIM FOR RELIEF**
**UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)**

64.     On each occasion when they permitted a SLEP-TONE accompaniment track to be played during a karaoke show, the Defendant permitted the display of the Sound Choice Marks in connection with the Defendant's karaoke entertainment services.

65.     The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that SLEP-TONE sponsored or approved the Defendant's services and commercial activities.

66.     The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by SLEP-TONE and purchased by the Defendant's contractor(s) for use in providing karaoke entertainment services.

67.     The Defendant's use of the Sound Choice Marks in this fashion would have inured to the benefit of the Plaintiff if the Defendant's contractor(s) had legitimately acquired genuine Sound Choice discs instead of counterfeiting them or acquiring counterfeit copies, in that the Plaintiff would have received revenue from such sales.

68.   Because SLEP-TONE has been denied this revenue, it has been damaged by the Defendant's uses.

69.   On each occasion when they permitted an accompaniment track pirated from another manufacturer to be played during a karaoke show, the Defendant permitted the display of the words, names, and symbols of the other manufacturer in connection with the Defendant's karaoke services.

70.   Upon information and belief, the Defendant's contractor(s)' use of those words, names, and symbols falsely designates the other manufacturer as the origin of the pirated track, when in fact the pirated copy was made or acquired by the contractor(s).

71.   The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that the Defendant's contractor(s) acquired in a legitimate manner.

72.   The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold those manufacturers and purchased by the Defendant's contractor(s).

73.   The Defendant's use of the false designations of origin in this fashion damages the Plaintiff by enabling the Defendant, through contractor(s), to provide karaoke entertainment services at a lower cost than persons who acquire those materials legitimately, including the Plaintiff's legitimate customers.

74. The consequential denial of revenue from a legitimate market for the Plaintiff's customers' services prevents the Plaintiff's customers from making purchases of material from the Plaintiff and is thus a denial of revenue to the Plaintiff.

75. Because SLEP-TONE has been denied this revenue, it has been damaged by the Defendant's false designations of origin relating to other manufacturers.

76. Unless enjoined by the Court, the Defendant's unfair competition activities as described above will continue unabated and will continue to cause harm to the Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff SLEP-TONE prays for judgment against the Defendant and that the Court:

A. Find that the Defendant, by virtue of its knowledge, ability to control, and benefit from acts of infringement of the federally registered Sound Choice Marks, directly committed by its contractor(s), is vicariously or otherwise indirectly and derivatively liable for those acts;

B. Find that the Defendant has engaged in unfair competition against Plaintiff SLEP-TONE in violation of 15 U.S.C. § 1125(a);

C. Enter judgment against the Defendant and in favor of SLEP-TONE;

D. Find the that Defendant's activities were in all respects conducted willfully and for profit;

E. Award to SLEP-TONE the Defendant's profits and the damages sustained by SLEP-TONE because of the Defendant's conduct in infringing the Sound Choice Marks, or, in the alternative, statutory damages per trademark infringed by counterfeiting, and in any event in an amount not less than $100,000 for each establishment in which counterfeit karaoke accompaniment tracks were used to provide karaoke entertainment services;

F.      Award to SLEP-TONE the Defendant's profits and the damages sustained by SLEP-TONE because of the Defendant's acts of unfair competition under 15 U.S.C. § 1125(a), in an amount not less than $100,000, based upon the conduct of the Defendant;

G.      Award to SLEP-TONE treble, punitive, or otherwise enhanced damages, as available, for the Defendant's acts of willful infringement;

H.      Grant SLEP-TONE preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks by the Defendant;

I.      Grant SLEP-TONE preliminary and permanent injunctive relief against further false designations of origin by the Defendant with respect to words, names, and symbols associated with other manufacturers;

J.      Award SLEP-TONE its costs of suit and attorney's fees, to the extent not awarded above; and

K.      Grant SLEP-TONE such other and further relief as justice may require.


Respectfully submitted,


Date: May 15, 2014           /s/ Vivek Jayaram
                              Vivek Jayaram
                              Jayaram Law Group
                              33 North LaSalle Street
                              Chicago, IL 60602
                              Ph: 312.454.2859
                              vivek@jayaramlaw.com
                              www.jayaramlaw.com
                              Illinois Bar #6284388
                              Attorney for Plaintiff